UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
FRANTZ BOULOUTE,

                              Petitioner,

    -against-                           MEMORANDUM AND ORDER
                                            08-CV-5008 (ILG)
UNITED STATES OF AMERICA,

                              Respondent.

-------------------------------------------------x

GLASSER, United States Senior District Judge:

      Petitioner Frantz Bouloute (the "petitioner"), a prisoner in federal custody, moves to amend his May 25, 2007 motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255 (the "Initial Petition"). On November 28, 2008, the petitioner filed a "Motion to Amend Original 2255 Petition to Add New Claim" (the "2008 Petition") to include his claim that the government violated his due process rights when it failed to disclose evidence that impeached the credibility of co-conspirator Robert Douyon who testified extensively for the government at the petitioner's trial.

      This Court denied the Initial Petition as without merit. Bouloute v. United States, No. 07 Civ. 2201 (ILG), 2008 WL 163693 (E.D.N.Y. Jan. 15, 2008). The Court now finds that the impeachment evidence described in the 2008 Petition is not prejudicial, and therefore, the claim in the 2008 Petition is denied.

1

# FACTS

In early 2003, the petitioner participated in a scheme to import cocaine from South America to the United States with three other individuals: an informant known as "Footso," Robert Douyon, and Frantz Bruno.[1] Footso, who had been arrested in early 2003, was cooperating with the Drug Enforcement Agency ("DEA"). He was known to the petitioner as someone that could smuggle drugs through New York area airports. Douyon was a long time friend of the petitioner. Bruno was an associate of Douyon who could obtain drugs from South America for importation to the United States. The four co-conspirators met in Miami on May 8, 2003, and agreed on a plan to import cocaine into the United States through New York area airports. Law enforcement photographed and audio-taped that meeting with the assistance of Footso.

In July 2003, law enforcement removed a suitcase that contained 30.19 kilograms of cocaine from a flight arriving at Newark International Airport that had originated in Venezuela. While attempting to obtain the suitcase from an agent posing as a baggage handler, the petitioner was arrested. The petitioner was indicted for conspiracy to import cocaine pursuant to 21 U.S.C. § 963, importation of cocaine pursuant to 21 U.S.C. § 952(a) and attempted possession with intent to distribute cocaine pursuant to 21 U.S.C. § 846.

According to the government, agents from the New York office of the Drug Enforcement Agency ("DEA-NY") were also prepared to arrest co-conspirator Douyon in July, but were asked to delay any arrest by the Miami bureau of U.S. Immigration and Customs Enforcement ("ICE-

---

[1] Unless otherwise noted, the facts are drawn from the Government's Memorandum of Law in Opposition to Frantz Bouloute's Motion to Amend his Original Petition Pursuant to 28 U.S.C. § 2255 dated February 27, 2009 ("Opp. Mem."), 2-10. The government's recitation of facts was not contested in the petitioner's reply brief.

FL"), as it was conducting a wiretap investigation of Douyon's brother-in-law and had been intercepting conversations between the two. After several months, ICE-FL advised DEA-NY that it was not going to arrest Douyon, and DEA-NY arrested him in October 2003. Shortly thereafter, Douyon agreed to cooperate with law enforcement and pleaded guilty to conspiring to import over five kilograms of cocaine into the United States from March 2003 through July 2003. At the petitioner's January 2005 trial, Douyon testified about the conspiracy and was cross-examined about his role in it and his cooperation agreement with prosecutors. A jury found the petitioner guilty on all three counts on January 27, 2005.

In the Initial Petition, the petitioner contended that the Court erred at sentencing by attributing to him the entire amount of cocaine that was seized and that his attorney's failure to object to the Court's calculation of the sentencing guidelines offense level constituted ineffective assistance of counsel. The Court denied the Initial Petition on the merits on January 15, 2008, and the petitioner appealed that decision to the Second Circuit.

Douyon was sentenced in the Eastern District of New York on November 29, 2007, for his role in the drug conspiracy with the petitioner. At the sentencing of Douyon, the petitioner's attorney learned for the first time that Douyon was charged in 2006 by federal prosecutors in the Southern District of Florida with narcotics trafficking activities in a sealed indictment and pleaded guilty to those charges in March 2007. (2008 Petition 2; Government Sentencing Letter dated November 20, 2007.)

On November 25, 2008, the petitioner moved the Second Circuit to hold in abeyance his appeal of this Court's order denying the Initial Petition so that it could be amended. The 2008 Petition was served on November 28, 2008, and the petitioner's motion to hold the appeal in

3

abeyance was granted on December 12, 2008. The 2008 Petition claims that the government failed to disclose that Douyon was being investigated for other narcotics offenses in Florida and evidence showing Douyon's involvement in those offenses.

## DISCUSSION

**I.     Amendment of the Petition**

A threshold question for the Court is whether it has jurisdiction to consider the 2008 Petition. Although the government does not contest this Court's jurisdiction, the failure of jurisdiction is nonwaiveable and may be addressed *sua sponte* at any time. See Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a "second or successive" post-sentencing application for a writ of habeas corpus must be certified by the appropriate court of appeals to contain either newly discovered evidence that would be sufficient to preclude a reasonable factfinder from making a finding of guilt or a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. 28 U.S.C. § 2255(h). Therefore, if the 2008 Petition is a "second or successive" petition, then this Court may not review it without prior certification from the Second Circuit. If the 2008 Petition is properly viewed as an amendment to the Initial Petition, than this Court may permit the amendment and consider the claims presented therein. In the Second Circuit, the applicable rule is that "so long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does not come within AEDPA's gatekeeping provisions for 'second or successive' petitions." Whab v.

4

United States, 408 F.3d 116, 118 (2d Cir. 2005). Although this Court is bound by this clear statement of the law, it is nonetheless puzzled by it.

In any other civil action that this Court is aware of, an appeal taken from a final judgment divests the district court of jurisdiction, precluding it from allowing amendments to the complaint. If this were not the case, civil litigants that lose in the district court could simply amend their complaints with new claims after filing an appeal, indefinitely postponing finality for the parties.

In the habeas context, the question is whether new claims brought after the district court's disposal on the merits of a prisoner's first habeas petition are properly construed as "second or successive" petitions that must be certified by the court of appeals under the standards set forth in § 2244 or are permissible amendments to the first petition. The petitioner cites cases that trace the development of Second Circuit law on this question. The first case in this line is Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001). In Littlejohn, the petitioner made a request to amend his petition before the district court had decided the petition on the merits. The Littlejohn court's holding, cited by the petitioner in his brief, summarizes Second Circuit law, stating that "before a motion or petition can be regarded as successive, there must be *some prior adjudication on the merits* or a dismissal with prejudice." Id. (emphasis added). Among the cases cited by Littlejohn was Corrao v. United States, which held that "[g]enerally, a § 2255 petition is 'second or successive' if a prior § 2255 petition, raising claims regarding the same conviction or sentence, has been decided on the merits. This remains true even if the latter petition purports to raise new claims." 152 F.3d 188, 191 (2d Cir. 1998). These cases tend to support the view that the 2008 Petition is "second or successive" because the rendering of a decision on the merits is a prior adjudication, a precondition of a "second or successive" petition. Here, the Court rendered

judgment on the Initial Petition on January 15, 2008 and granted a certificate of appeal on June 4, 2008. The denial of the Initial Petition was both an adjudication on the merits and a dismissal with prejudice.

In <u>Ching v. United States</u>, 298 F.3d 174 (2d Cir. 2002), the Court articulated special rules allowing for the amendment of habeas petitions after dismissal by the district court. Ching's initial habeas petition was denied by the district court as untimely, and that determination was appealed to the Second Circuit. <u>Id.</u> at 175. Before that appeal was decided, Ching submitted to the district court another petition for habeas relief. <u>Id.</u> at 176. Shortly thereafter, the Second Circuit vacated the finding of untimeliness with regard to the initial petition and remanded it to the district court. <u>Id.</u> The district court then denied the claims in the initial petition on the merits and transferred the subsequent petition to the Second Circuit as a "second or successive" petition in need of certification. <u>Id.</u> The Court held that the district court erred when it construed the subsequent petition as a "second or successive" petition, holding that "adjudication of Ching's initial motion was not yet complete at the time he submitted his second § 2255 motion," because "[t]he denial of the [initial] motion was still pending on appeal before this Court and no final decision had been reached with respect to the *merits* of Ching's claim." <u>Id.</u> at 178 (emphasis added). <u>Ching</u> left open the question of whether adjudication of the initial petition was not complete because the district court, in dismissing the petition on procedural grounds, had not reached the merits by the time the second motion was made, or because the denial of the initial petition was on appeal.

The Second Circuit resolved this question in <u>Whab v. United States</u>, 408 F.3d 116 (2d Cir. 2005). <u>Whab</u> stated that "for a subsequent petition to be considered 'second or successive,' bringing into play AEDPA's gatekeeping provisions, the disposition of an earlier petition must

6

qualify as an adjudication on the merits." Id. at 118 (collecting cases). This statement would strongly, albeit erroneously, lead to the conclusion that this Court's adjudication of the Initial Petition on the merits would make the 2008 Petition a "second or successive" petition. In the same paragraph, in reliance upon Ching, Whab held that, "so long as appellate proceedings following the district court's dismissal of the initial petition remain pending when a subsequent petition is filed, the subsequent petition does not come within AEDPA's gatekeeping provisions for 'second or successive' petitions." Id. In fact, Whab went so far as to conclude that the adjudication of a habeas petition "will not be final until petitioner's opportunity to seek review in the Supreme Court has expired." Id. at 120.[2]

While the reasoning behind the rule articulated in Whab, and restated just two months ago in Hoffenberg v. United States, No. 06-3208-pr, 2009 WL 1740050, at *2 (2d Cir. June 19, 2009) ("[b]ecause Petitioner filed his subsequent petition before we ruled on the appeal from his first petition, the subsequent petition is not 'second or successive' and therefore could have been filed in the District court in the first instance"), is puzzling, it is nonetheless binding upon this Court.[3] Therefore, because the petitioner's appeal from a final judgment of this Court denying the Initial Petition was still pending before the Second Circuit at the time the 2008 Petition was

---

[2] Plainly stated, this holding means that amendments to a prisoner's habeas petition will not be deemed "second or successive" under AEDPA even after the court of appeals has denied an appeal on the merits, so long as the time for seeking Supreme Court review has not expired.

[3] At least one court of appeals has looked askance at the Second Circuit's approach. Ochoa v. Sirmons, 485 F.3d 538, 540 (10th Cir. 2007) ("Mr. Ochoa argues as a threshold matter that authorization under § 2244(b) is unnecessary so long as his first habeas action has not been finally adjudicated on appeal. He relies on a Second Circuit case, Whab [ ], for this proposition. No other circuit has followed Whab, and we decline to do so.")

Perhaps this Court's denial of the claim in the 2008 Petition will prompt the petitioner to seek review of its jurisdiction to do so. While the pressing of meritless claims by a prisoner making no claim of innocence is among the most wasteful uses of judicial resources, perhaps it would prompt the court above to take a fresh look at its rule in Whab. See Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142 (1970).

filed, the 2008 Petition must be regarded as an amendment and not a second or successive petition.

Having thus established this Court's jurisdiction to consider such an amendment, the question becomes whether the amendment is permissible pursuant to Fed. R. Civ. P. 15(a)(2). See Littlejohn, 271 F.3d at 363 ("The application of Rule 15(a) is supported by 28 U.S.C. § 2242, which states that a petition for habeas corpus 'may be amended or supplemented as provided in the rules of procedure applicable to civil actions . . .'"). Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Because the government has not opposed the amendment of the Initial Petition, the Court will construe it as timely made within one year of "the date on which the facts supporting the claim . . . presented could have been discovered through the exercise of due diligence" pursuant to 28 U.S.C. § 2255(f)(4) and will consider the parties' arguments relating to the merits of the petitioner's latest claim.[4]

## II.  Duty to disclose impeachment information

The basis of the claim added by the petitioner is that the prosecution knew or should have known that Douyon was under investigation in the Southern District of Florida and withheld from the defense information from that investigation. The petitioner argues that the revelation of this information at his trial would have impeached the testimony of Douyon which was essential to the government's case.

Under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, the prosecution has an affirmative duty to disclose evidence that is favorable to an accused where such evidence is

---

[4] Although the petitioner's motion is styled as a "Motion to Amend," the merits of the additional Brady claim have been fully briefed by the parties.

8

material to either guilt or punishment. Strickler v. Greene, 527 U.S. 263, 280 (1999). That duty encompasses impeachment evidence as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler, 527 U.S. at 280 (quoting Bagley, 473 U.S. at 676). Individual prosecutors have "a duty to learn of evidence known to others acting on the government's behalf in this case, including the police." Kyles v. Whitley, 514 U.S. 419, 438 (1995) (quoted in Strickler, 527 U.S. at 281).

"There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler, 527 U.S. 281-82. See United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001).

A.   **Favorability of the evidence to the accused**

The investigation of Douyon for additional drug trafficking activities by ICE-FL clearly does not reflect favorably upon him. Although the jury could conceivably take the view that evidence of additional drug trafficking by Douyon enhances his credibility as an authority on drug conspiracies or increased his incentive to truthfully testify in accordance with his cooperation agreement, the Court is inclined to give the petitioner the benefit of the doubt. The Court finds that the Brady violation requirement that the evidence is favorable to the accused is satisfied.

B.   **Suppression by the government**

The question of whether the investigation of Douyon was suppressed by the government does not immediately lend itself to a clear answer. If the prosecutor had a duty to seek details about the investigation, or if knowledge of either ICE-FL or prosecutors in the Southern District of Florida may be otherwise attributed to the prosecutor, then the information was suppressed. Here, the prosecutor was aware of the wiretap investigation of Douyon's brother-in-law, but concluded that Douyon was not implicated in the investigation once ICE-FL gave DEA-NY the green light to arrest him in October 2003.

The Second Circuit has consistently held that knowledge of one part of the government will not automatically be imputed to criminal prosecutors in another. United States v. Locasio, 6 F.3d 924, 949 (2d Cir. 1993); United States v. Quinn, 445 F.2d 940, 944 (2d Cir. 1971). In Locasio, the prosecution's key witness, a high ranking member of the Gambino organized crime family, testified against the Gambino family boss and underboss. The Locasio court "refused to impute to the AUSAs prosecuting that action knowledge of reports prepared by FBI agents who were 'uninvolved in the investigation or trial of the defendants-appellants.'" United States v. Avellino, 136 F.3d 249, 255-56 (2d Cir. 1998) (citing Locasio, 6 F.3d at 949). See also United States v. Gambino, 835 F.Supp. 74, 95 (E.D.N.Y. 1993) (Glasser, J.) ("That imputation presupposes a monolithic view of government which, if adopted, would condemn the prosecution of criminal cases to a state of paralysis.")

In Quinn, the indictment of an important government witness in Florida was unsealed one week after the trial in which the witness testified. 445 F.2d at 944. Neither the prosecutor nor the defendant were aware of the pending indictment. Id. The Quinn court held that knowledge of a sealed indictment in Florida could not be imputed to a New York prosecutor, describing the appellant's contention that "knowledge of any part of the government is equivalent to knowledge

on the part of this prosecutor" as "completely untenable." Id. These holdings are in accord with the Kyles formulation that the duty of a prosecutor is "to learn of evidence known to others acting on the government's behalf in *this case*." Kyles, 514 U.S. at 438 (emphasis added).

The Court has reviewed the cases from other circuits cited by the petitioner which suggest that a prosecutor has an affirmative duty to make certain reasonable inquiries about witnesses.[5] These cases are distinguishable and, in any case, are not binding on the Court. United States v. Payne, 63 F.3d 1200 (2d Cir. 1995), the only Second Circuit case cited by the petitioner for this proposition is decidedly inapposite. In Payne, the prosecutor had actual knowledge of impeachment evidence pertaining to a prosecution witness because he had also prosecuted the case against that witness in which the evidence arose. Id. at 1209.[6]

---

[5] See, e.g. United States v. Brooks, 966 F.2d 1500, 1502-03 (D.C. Cir. 1992) (prosecutor had duty to search police records for impeachment material about key police officer witness after the officer's shooting death under unusual circumstances prior to retrial of the case); United States v. Osorio, 929 F.2d 753, 761 (1st Cir. 1991) ("prosecutor charged with discovery obligations cannot avoid finding out what 'the government' knows, simply by declining to make reasonable inquiry of those in a position to have relevant knowledge"); United States v. Perdomo, 929 F.2d 967 (3d Cir. 1991) (nondisclosure of witness's criminal background inexcusable where readily available to prosecutors in records of crimes committed in the Virgin Islands).

[6] In his reply brief, the petitioner argues that the prosecutor had a duty to search for information on Douyon in the Narcotic and Dangerous Drug Information System (NADDIS). According to the Department of Justice, NADDIS contains:

> summaries of reports on subjects of interest to DEA, consisting of over 5.9 million subjects on individuals, businesses, vessels, aircraft and selected airfields identified through the DEA investigative reporting system, and related investigative records . . . . to record and document the results of inquiries that result in arrest and seizures as a result of a criminal investigation or to obtain intelligence information for a prospective investigation.

DEA Major Information Systems, http://www.usdoj.gov/dea/foia/naddis.html (last visited Aug. 17, 2009). Based on this description of NADDIS, it is likely that a record on Douyon could be found among the 5.9 million entries. It is reasonable to ask, in an age of computer databases nearly forty years removed from Quinn, whether the prosecutor has a duty to access and examine records pertaining to government witnesses with known connections to drug trafficking where the source is readily accessible. Any answer to that question, however, would be nothing more than dicta given that information about the Florida investigation contained in the NADDIS database would not have resulted in a different outcome to the proceedings.

Here, the undisclosed charges against Douyon were brought by another prosecutor based on another investigation in another state. Although the petitioner's prosecutor was aware of the wiretaps of Douyon's brother-in-law which included conversations with Douyon, the prosecutor reasonably inferred from the decision of authorities in Florida not to arrest Douyon that he was not implicated in criminal activity.

Because this Court finds no law or precedent requiring that knowledge of impeachment evidence resulting from an investigation by federal prosecutors in another state be imputed to prosecutors in the Eastern District of New York, the plaintiff must show that the prosecutors had actual knowledge of it. The plaintiff has requested an evidentiary hearing which would presumably reach this question. However, "[t]he disclosure obligations of Brady and Giglio apply only to impeaching or exculpatory information that is of sufficient importance to be deemed 'material.'" U.S. v. Rodriguez, 496 F.3d 221, (2d Cir. 2007) (citing United States v. Bagley, 473 U.S. 667, 678 (1985); United States v. Agurs, 427 U.S. 97, 108 (1976)). Therefore, such an inquiry is unnecessary because, as explained below, the allegedly withheld information is insufficiently material to satisfy the prejudice requirement.

## C. Prejudice to the defendant

A Brady violation may only established only if the suppressed evidence is material. Payne, 63 F.3d at 1208. "Materiality encompasses the notions that the suppressed evidence is favorable to the accused and that he was prejudiced by its suppression." U.S. v. Douglas, 525 F.3d 225, 244 (2d Cir. 2008). Evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the

outcome." Bagley, 473 U.S. at 682. See United States v. Bejasa, 904 F.2d 137, 140 (2d Cir. 1990).

Second Circuit case law sets forth those scenarios where impeachment evidence is material. First, "[s]uppressed evidence is not material when it 'merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." United States v. Amiel, 95 F.3d 135, 145 (2d Cir. 1996) (citing United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996). At trial, Douyon's testimony was impeached in other ways. In addition to coming to the stand as an admitted drug trafficker, Douyon's testimony was in admittedly in exchange for a recommendation by the government of a lenient sentence for his role in the conspiracy. Therefore, evidence of other trafficking activities was merely cumulative. See Locasio, 6 F.3d at 950 ("Moreover, the Brady argument defies logic. There would be no reason for the prosecution to withhold evidence of three or four more murders, considering that the jury already heard evidence of 19 other murders.")

Second, impeachment evidence is material if "the witness whose testimony is attacked supplied the only evidence linking the defendants to the crime . . ." Wong, 78 F.3d at 79. Douyon's testimony was not the only evidence linking the petitioner to the crimes for which he was convicted. Audio recordings of meetings where the co-conspirators formulate the importation scheme were introduced at trial, as was testimony of the case agent who worked with Footso. The petitioner was directly linked to the seized quantity of cocaine by his possession of a piece of paper bearing information describing the bag that was seized.[7]

---

[7] The petitioner complains that Agent Callahan's testimony was dependent on hearsay from Footso (Appellant's Reply to Government's Response to Appellant's Motion to Amend 2255 Habeas Petition dated May 5, 2009 ("Pet. Reply Mem."), 12-13), and that the baggage information for the cocaine-laden suitcase found on his person on July 14 was unreliable because the writing was not discovered until long after the arrest. (Pet. Reply

13

The third formulation under which the materiality requirement may be met, is for "the likely impact on the witness's credibility," to "undermine[ ] a critical element of the prosecution's case." Wong, 78 F.3d at 79. The petitioner argues that the impeachment evidence would change the jury's assessment of Douyon's truthfulness by supporting the inference that he had a propensity to lie under oath. The petitioner argues that Douyon's failure to volunteer under direct examination the fact that he was involved in drug trafficking in Florida could have triggered a damaging cross-examination where the defendant could have confronted Douyon with this impeachment information. (Pet. Mem. 5-6.)[8]

The petitioner also argues that the possibility of additional charges against Douyon materially increased his incentive to fabricate testimony that supported the government's case in hopes of receiving lenient treatment in a future prosecution for his Florida trafficking activities. (Pet. Mem. 6.) ("[T]he fact that Douyon had a criminal case pending in federal court in another state and was contemplating entering into a separate cooperation agreement with the government may have been cumulative of his motivation to testify favorably for the government.") However, the petitioner's assumption that Douyon knew of the Florida investigation and was modulating his testimony in anticipation of a separate cooperation agreement is nothing but speculation. (Pet. Mem. 6)

The petitioner's assessment of the impact of this incremental addition to the impeachment of Douyon is at odds with the Court's own observations at trial and common sense. Douyon was already an admitted drug trafficker as a co-conspirator of the petitioner. The suggestion that a

---

Mem. 14.) Be that as it may, the time for challenging the admissibility of testimony and physical evidence was at trial, not in an amendment to a motion for post-sentencing relief years after trial.

[8] This argument assumes that the government itself would not have brought out such information on direct examination if it were known to the parties at the time.

jury would give substantially less weight to his testimony because he was being investigated for other trafficking offenses or because his cooperation could impact two cases against him as opposed to one is not persuasive. The possible sentence faced by Douyon in the Eastern District provided ample incentive for him to provide damaging testimony against the petitioner. Therefore, the Court finds that there is no reasonable probability that the result of the trial would have been different had the Florida investigation been disclosed.

## CONCLUSION

For the foregoing reasons, petitioner's additional claim that his trial denied him due process of law is denied. The claims in the Initial Petition and the 2008 Petition having been denied, it is hereby ORDERED that the petition for a writ of habeas corpus is dismissed and the Clerk of the Court is directed to enter final judgment on this petition and to close the case.

SO ORDERED.


Dated:       Brooklyn, New York
               August 19, 2009

                                                     /s/
                                      I. Leo Glasser
                                      United States Senior District Judge

**Copies of the foregoing memorandum and order were electronically sent to:**

<u>Counsel for the Petitioner</u>

Frantz Bouloute
61862-053
Federal Correctional Institution Miami
P.O. Box 779800
Miami, FL 33177
PRO SE

<u>Counsel for the Respondent</u>

Celia Cohen
United States Attorneys Office
271 Cadman Plaza
Brooklyn, NY 11201

SreeVamshi Reddy
U.S. Attorney's Office, E.D.N.Y.
271 Cadman Plaza East
Brooklyn, NY 11201